*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GRADY-HARLAN, Minors.

UNPUBLISHED
March 4, 2021

Nos. 352156; 352157
Wayne Circuit Court
Family Division
LC No. 17-000029-NA

Before: SWARTZLE, P.J., and MARKEY and TUKEL, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent-mother and respondent-father appeal as of right the trial court's orders terminating respondent-mother's parental rights to her children, LCGH, LAGH, MBGH, EBRGH, and JLGH, and terminating respondent-father's parental rights to his children, MBGH, EBRGH, and JLGH, pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j).[2] We affirm in both appeals.

## I. UNDERLYING FACTS

In January 2017, the four oldest children (LCGH, LAGH, MBGH, and EBRGH) were removed from respondent-mother's care because she lacked suitable housing and a legal source of income, and she had ongoing substance abuse and mental health issues. After respondent-father established paternity to MBGH and EBRGH in September 2017, an adjudication took place with respect to him in February 2018 and he was provided with a treatment plan. Both respondents were required to obtain and maintain suitable housing; obtain and maintain a legal source of income; and address mental health and substance abuse issues, among other requirements. After

---

[1] On January 17, 2020, this Court entered an order consolidating these two appeals. *In re Grady-Harlan Minors*, unpublished order of the Court of Appeals, entered January 17, 2020 (Docket Nos. 352156 and 352157). Respondent-mother appeals in Docket No. 352156; respondent-father appeals in Docket No. 352157.

[2] At the time respondents' parental rights were terminated, neither LCGH nor LAGH had legal fathers, and the identities of their biological fathers were unknown.

-1-

respondents' youngest child, JLGH, was born in mid-2018, and tested positive for marijuana at birth, she too was placed in care and made a court ward.

Throughout the proceedings, both respondents were inconsistent with their participation in services and compliance with their treatment plans. They both attended parenting classes, and respondent-mother was provided with the assistance of a parenting coach and parenting partner, but respondents failed to demonstrate any benefit from these services, especially when parenting their children. Respondents were inconsistent in visiting the children, and respondent-father missed more visits than he attended. When they did appear for visits, respondents' behavior in front of the children was often disruptive and inappropriate, and respondent-mother struggled with parenting all five children at the same time. Respondent-mother also consistently failed to address her mental health issues and was hospitalized in the spring of 2019 after not taking her medication as prescribed. Both respondents also failed to address their substance abuse. Respondent-father completed only 7 out of 62 requested drug screens, all of which were positive for marijuana, and respondent-mother completed only 19 of 62 drug screens, all of which were also positive for marijuana.

Because of respondents' lack of progress, in February 2019, pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j), petitioner filed a supplemental petition to terminate respondents' parental rights. Following a hearing that concluded in November 2019, the trial court found that those three statutory grounds for termination were established by clear and convincing evidence, and that termination of respondents' parental rights was in the children's best interests. These consolidated appeals followed.

## II. STATUTORY GROUNDS

Respondents first argue that the trial court erred by finding that clear and convincing evidence supported termination of their parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j). We disagree.

## A. STANDARD OF REVIEW

This Court "reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014). To be clearly erroneous, a trial court's determination must be more than possibly or probably incorrect. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. Finally, this Court must consider "the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id*.

## B. APPLICATION

"Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App at 32. In relevant part, MCL

712A.19b(3) authorizes a trial court to terminate parental rights if it finds by clear and convincing evidence that any of the following exist:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> > (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
> >
> > (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> \* \* \*
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court found three statutory grounds for terminating respondents' parental rights by clear and convincing evidence, MCL 712A.19b(3)(c)(*i*), (c)(*ii*) and (j). "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home" and fulfills the requirements of MCL 712A.19b(3)(j). *In re White*, 303 Mich App at 711. Under MCL 712A.19b(3)(j), harm can include either physical or emotional harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

## 1. RESPONDENT-MOTHER

Respondent-mother's treatment plan required her to undergo a psychiatric and psychological evaluation; attend parenting classes; participate in individual therapy, substance abuse therapy, and weekly drug screens; maintain her mental health; obtain and maintain appropriate housing and a legal source of income; keep in touch with her foster care worker; and attend all court hearings. Respondent-mother participated in some of these services, but she ultimately failed to comply with her service plan as a whole.

In March 2018, respondent-mother was ordered to undergo substance abuse treatment because she reported that she was using marijuana and cocaine. She participated in parenting classes after being referred three times, but she did not benefit from them because she was unable to effectively parent her children, and she struggled with managing all of the children at the same time. With regard to individual therapy, respondent-mother participated in her mental health services inconsistently, and while she reported that she was compliant with her treatment, she did

not provide verification. Respondent-mother also stopped attending psychiatric appointments—without consulting with her physician—after reporting that she did not like how her prescribed medication made her feel. In the spring of 2019, respondent-mother was admitted to inpatient psychiatric care after she was found wandering in the street; she was incoherent, belligerent and aggressive; she had not been taking her prescribed medications at that time. According to the caseworker, respondent-mother had not benefited from her mental health treatment because she was not taking her medication consistently; when she did not take her medication, she behaved aggressively. In addition, respondent-mother's parenting and behavior in front of the children was inappropriate.

Throughout the lower court proceedings, respondent-mother received mental health services through the Development Center,[3] but she reported to the caseworker that the staff there had overdosed her on medication and she did not want to go back. When the caseworker contacted the Development Center to confirm the allegation of an overdose, the staff reported that respondent-mother was administered her medication as prescribed by her psychiatrist. Furthermore, respondent-mother was not engaged in services for a time, then reengaged with Team Mental Health, but again was not taking her psychotropic medication and displayed erratic behavior, which led to her inpatient hospitalization. The caseworker had personally seen respondent-mother talking to imaginary people, most recently in June 2019. With respect to housing, as of August 27, 2019, respondent-mother was still residing with respondent-father, his sister, and his mother at a home that DHHS had not been able to assess for suitability, and she did not have a legal source of income. Respondent-mother had been provided with a parenting coach, who was present for all parenting-time visits and helped educate respondent-mother on disciplinary matters, such as redirecting her children and developmental milestones, but respondent-mother was terminated from that program and the caseworker did not notice any improvement in respondent-mother's parenting as a result of her participation.

Finally, respondent-mother stopped going to her substance abuse therapy, completing only 19 of 62 drug screens. All of her completed drug screens were positive for marijuana and respondent-mother was aware that all missed drug screens are deemed positive drug screens. Consequently, the record establishes that respondent-mother failed to comply with her service plan and, therefore, the trial court did not err by finding statutory grounds to terminate her parental rights under MCL 712A.19b(3)(j). See *In re White*, 303 Mich App at 711.

## 2. RESPONDENT-FATHER

Respondent-father's treatment plan required him to participate in parenting classes; individual therapy; substance abuse counseling; weekly random drug screens; and a psychological evaluation and psychiatric evaluation if recommended. The plan also required him to: obtain and maintain a legal source of income and suitable housing; maintain contact with DHHS workers;

---

[3] Respondent-mother was diagnosed with schizophrenia, bipolar disorder, and major depressive disorder.

and attend all court hearings and visits with the children. Respondent-father participated in some of these services, but he ultimately failed to comply with his service plan as a whole.

Respondent-father completed parenting classes, but he did not benefit from them. He was inconsistent in attending visits with the children, missing over half of the visits. On the occasions when respondent-father did come for visits, he often arrived late or left early, and frequently acted inappropriately or argued with respondent-mother. For example, in April 2019, instead of redirecting LAGH when he was throwing cans of food around the room, respondent-father encouraged LAGH to engage in disruptive and unruly behavior, and respondent-father also told LAGH that he could not stand him. On another occasion in April 2019, respondent-father did not intervene to redirect LAGH when he was acting aggressively with the other children, even as the other children began to cry. Indeed, both respondents repeatedly argued in front of the children.

Respondent-father was referred for individual therapy six times, but was terminated from participating five times; he most recently started participating in therapy in March 2019. Respondent-father completed a psychological examination on January 3, 2019, after which the psychologist recommended that he participate in anger management services and obtain a psychiatric examination to determine whether he needed medication. Although respondent-father was referred for anger-management services, he stated that if he was prescribed medication he would refuse to take it because he believed that all medication contained heroin and crack cocaine. Respondent-father was referred for substance abuse services six times, but did not benefit from substance abuse therapy and continued to use marijuana. Indeed, respondent-father completed only 7 of 62 drug screens and he was aware that missed drug screens are considered positive. Of the seven drug screens that respondent-father did complete, all seven were positive for marijuana. Additionally, in April 2019, respondent-father attended a parenting-time visit smelling of alcohol, and in June 2019, he arrived at a visit smelling of marijuana and eventually admitted having marijuana in his possession during the visit. Respondent-father also was under the influence during his psychological evaluation in January 2019.

At the time of the termination hearings, respondent-father was living with his sister and mother in a home that petitioner had not been able to assess for suitability because respondent-father refused to cooperate in scheduling an assessment, and respondent-father also was unable to provide verification of a legal source of income. Contrary to respondent-father's assertion, his use of marijuana impacted his parenting of the children because he and respondent-mother were not able to secure federally subsidized housing due to their marijuana use. In summary, the record establishes that respondent-father failed to comply with his service plan and, therefore, the trial court did not err by finding statutory grounds to terminate his parental rights under MCL 712A.19b(3)(j). See *In re White*, 303 Mich App at 711.

## III. BEST INTERESTS

Respondents next argue that the trial court erred by finding that termination of their parental rights was in the children's best interests. We disagree.

-5-

## A. STANDARD OF REVIEW

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40-41; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's ruling regarding best interests are reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016).

## B. APPLICATION

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. In considering the child's best interests, the trial court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App at 87. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. When the trial court makes its best interests-determination, it may rely upon evidence in the entire record, including the evidence establishing the statutory grounds for termination. *In re Trejo*, 462 Mich 341, 353-354; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App at 83.

### 1. COMPLIANCE WITH SERVICE PLANS

The trial court did not err, clearly or otherwise, in finding that termination of respondents' parental rights was in the children's best interests. As discussed earlier, respondents failed to comply with or benefit from their service plans. Indeed, at the time of termination, respondent-mother still did not have a legal source of income, and her housing with respondent-father could not be assessed to determine if it was suitable for the children, because respondents were not cooperating with petitioner. Over the course of more than 30 months, respondents demonstrated little benefit from services and failed to improve their parenting abilities. Respondent-mother was provided with a parenting coach, but was still inappropriate in parenting her children and eventually she was terminated from the parent-coach program. In June 2019, she was observed talking to imaginary people during parenting-time visits, and she frequently argued with respondent-father in front of the children. Respondent-mother failed to adequately address her mental health issues and at the time of termination was not consistently taking her medication. In the spring of 2019, she was admitted to inpatient psychiatric care after she was found wandering in the street; she was incoherent, belligerent and aggressive; she had not been taking her prescribed medications at that time.

Additionally, as recently as August 2019, respondent-father had not participated in drug screens and he would not cooperate to allow the caseworker to perform an assessment of his sister's home, in which he was living. Respondent-father was not consistent with his visitation. Indeed,

he missed more visits than he attended. Respondent-father's demeanor was short-tempered, he would anger easily at parenting-time visits, and he and respondent-mother would argue in front of the children. During one visit in May 2019, respondent-father arrived more than two hours late to a visit with his children and made a scene in front of them, "saying that he wants a meeting with everybody." This upset the children, and the caseworker and her supervisor had to take respondent-father aside and speak to him about the importance of being appropriate at all times in front of the children. Furthermore, as discussed earlier, respondent-father was referred for substance abuse services six times and did not benefit from substance abuse therapy because he continued to use marijuana and test positive for it following drug screens. He was also under the influence during his January 2019 psychological evaluation and he did not provide proof of a legal source of income.

## 2. RESPONDENT-MOTHER'S BOND WITH THE CHILDREN

Respondent-mother argues that the trial court erred by failing to consider her strong bond with her children. The record, however, reflects that the children were not strongly bonded with respondent-mother. The caseworker testified that LAGH was the most bonded to respondent-mother, apparently because of the time respondent-mother spent addressing respondent-father's challenging behaviors, but the caseworker explained that EBRGH and respondent-mother's bond had diminished, and that EBRGH would not let respondent-mother touch her. According to the caseworker, MBGH favored respondent-father, but would usually play by herself during parenting time. Another foster care worker testified that EBRGH looked to her, not either respondent, for comfort and that the entire family was not bonded. Consequently, consideration of any bond that respondent-mother shared with her children did not weigh against termination of her parental rights.

## 3. PLACEMENT WITH RELATIVES

Both respondents argue that the trial court erred by not considering placement of the children with relatives before ordering termination of their parental rights. In *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010), our Supreme Court, citing MCL 712A.19a(6)(a),[4] held that "a child's placement with relatives weighs against termination[,]" and that a child's relative placement is "an explicit factor to consider" in the best-interest analysis. If the trial court does not "explicitly address" whether termination is appropriate in light of a child's placement with relatives, the factual record is inadequate and reversal will be required. *In re Olive/Metts*, 297 Mich App at 43.

The record clearly establishes that the trial court did acknowledge that JLGH was placed in the care of maternal relative Judy Pressley, but that this placement did not alter its finding that

---

[4] As a result of statutory amendments, the relevant statutory language can now be found at MCL 712A.19a(8)(a).

termination of respondents' parental rights was in JLGH's best interests.[5] Pressley and another maternal relative, Bonnie Banks, had expressed a willingness to care for the remaining four children on a long-term basis. The trial court also explained that these relative placements were intended to be long term, with both Banks and Pressley being willing to consider a guardianship or adoption of the children. Notably, Pressley had informed the caseworker that she would also consider adopting LAGH if respondent-mother's parental rights to LAGH were terminated. As the trial court recognized, the long-term placements with maternal relatives were not intended to allow respondent-mother additional time within which to reunify with her children. Thus, even considering the actual relative placement of JLGH, and the potential relative placements for LCGH, LAGH, MBGH, and EBRGH, the trial court correctly acknowledged that it was highly unlikely that the children would be returned to respondents' home within the foreseeable future. See *In re Olive/Metts Minors*, 297 Mich App at 41-42.

### 4. BEST INTERESTS OF THE CHILDREN INDIVIDUALLY

Respondent-mother also claims that the trial court erred by not considering the best interests of each child individually. This Court has recognized that the trial court is "to decide the best interests of each child individually." *Id*. at 42. This mandate is fulfilled when "each child [is] treated as an individual[,]" and the trial court "view[s] each child individually when determining whether termination of parental rights is in that child's best interests." *Id*. Nevertheless, a trial court is not required to make individual and redundant best-interest findings for each child when the best interests of the children do not significantly differ. *In re White*, 303 Mich App at 715-716.

The record reflects that the trial court was aware that JLGH was residing with Pressley, and that Banks and Pressley were willing to plan for all five children for the long-term, either through a guardianship or by adopting them. The trial court also acknowledged respondent-mother's lengthy and unsuccessful struggle with her mental health issues, as well as the fact that she had not benefited from services, which included parenting classes, and that she and respondent-father would behave inappropriately in front of the children, including fighting in front of them. The trial court's consideration of respondent-mother's failure to benefit from services and recognition that she was unable to overcome her mental health issues were factors that applied equally to all five children, despite their actual and potential relative placements. Thus, the trial court was not required to address the best interests of each child individually. See *In re White*, 303 Mich App at 715-716.

### 5. RESPONDENTS' VISITATIONS WITH JLGH AND EBRGH

Finally, both respondents challenge the trial court's best-interest determination on the basis that they were not able to bond with JLGH and EBRGH because JLGH's foster parent would not bring her to parenting-time visits and EBRGH was often absent from parenting-time visits. The

---

[5] Respondent-father states in his brief on appeal that all of the children were in relative placement. This is incorrect. JLGH was the only child in relative placement; all of the other children were in nonrelative foster care.

record reflects that before JLGH was placed with Pressley, her foster parent was uncooperative in bringing her to parenting time, and that EBRGH also missed an unspecified number of parenting-time visits. During her testimony on the final day of the hearing, Banks stated that EBRGH was present at parenting-time visits with respondents. In any event, the record also reflects that respondents struggled to behave appropriately during parenting time, often arguing in front of the children, and their conflict would lead to respondent-mother displaying questionable behavior, such as talking to herself or imaginary people, or banging her head on the wall. Respondent-father was not consistent in his attendance at parenting time, missing more visits than he attended. Foster care workers who observed parenting-time visits also related that EBRGH was not bonded to respondent-mother and would not seek her out for comfort or to meet her needs during parenting time, and that respondents were not closely bonded with any of the children. Regardless, the trial court did not principally rely on the lack of a bond with any child to find that termination of parental rights was in the children's best interests. Rather, in finding that termination of respondents' parental rights was in the children's best interests, the trial court focused more on respondents' failure to benefit from services, the children's special needs, and the unlikelihood that respondents would ever be able to adequately care for the children and address their special needs. Under these circumstances, despite JLGH's absence from parenting-time visits, and that EBRGH may have attended less visits than the other children, the trial court did not err in finding by a preponderance of the evidence that termination of respondents' parental rights was in all the children's best interests.

## IV. CONCLUSION

For the reasons stated in this opinion, the trial court's orders terminating respondents' parental rights are affirmed in both appeals.

/s/ Brock A. Swartzle
/s/ Jane E. Markey
/s/ Jonathan Tukel